UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **CHARLES CRAFT, ET AL.** | **CASE NO. 6:22-CV-05899** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **MAX ACCESS LLC, ET AL.** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

**MEMORANDUM RULING**

Pending before the Court is a Motion for Judgment on the Pleadings [Doc. No. 59] filed by The Lemoine Company, LLC ("Lemoine"). Plaintiffs, Charles Craft and Crystal Craft, individually and on behalf of their minor children Grayson Craft and Whitney Craft (collectively, "Plaintiffs"), filed an Opposition [Doc. No. 71]. Lemoine filed a Reply to the Opposition [Doc. No. 72].

For the following reasons, the Motion is **GRANTED**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On November 2, 2022, Plaintiffs filed a Petition for Damages against Defendants. On November 4, 2022, the matter was removed to this Court based on diversity jurisdiction.[1]

In their Complaint, Plaintiffs assert Lemoine is liable for the acts and omissions by each of its employees, agents, representatives, and/or servants pursuant to the doctrine of vicarious liability.[2] In its First Affirmative Defense, Lemoine asserts that all of Plaintiffs' claims against Lemoine are precluded by the exclusivity provisions in the Louisiana Worker's Compensation Act ("LWCA") because it qualifies as Charles Craft's ("Craft") "statutory employer."[3]

---

[1] [Doc. No. 1]
[2] [Doc. No. 12, ¶ 33]
[3] [Doc. No. 21, pp. 6–7]

The events leading up to this suit are as follows. Lemoine entered into a contract with Ochsner, owner of Lafayette General Medical Center, located in Lafayette, Louisiana, to perform construction work at a medical facility in Lafayette (the "Project").[4] Lemoine entered into this contract with Ochsner as the general contractor. Lemoine subcontracted with FL Crane & Sons, Inc. ("FL Crane") to install z grits, insulation, and stucco at the Project. FL Crane then contracted with Max Access, LLC d/b/a/ Sky Climber Access Solutions ("Max Access") to deliver and install swing scaffolding.[5] The swing scaffolding was to allow FL Crane employees to perform work on the outside of the Ochsner building at elevated heights.[6] Lemoine rented a crane from Morrow Equipment Company, LLC, and contracted with Skyhook Ops, LLC ("Skyhook") to provide a skilled certified crane operator for the Project.[7]

On May 16, 2022, Craft was working on the Project for FL Crane.[8] On that day, Lemoine had employees and subcontractors working in various locations at the Project, including the rooftops on the fifth and seventh levels of the hospital, as well as from swing scaffolding.[9] Lemoine employees directed and instructed the crane operator to lift three porta potties to the seventh floor of the hospital for use by its employees and subcontractors.[10] The crane operator lifted three porta potties to the seventh floor of the hospital, and Lemoine employees unhooked one of the three porta potties.[11] Lemoine employees then signaled the crane operator to lift the remaining two porta potties so they could be lowered and dropped on the fifth floor.[12] The remaining two porta potties

---

[4] [Doc. No. 59-1, p. 1–2]
[5] [Id. p. 2]
[6] [Doc. No. 12, ¶ 10]
[7] [Doc. No. 59-1, p. 2]
[8] [Id.]
[9] [Doc. No. 12, ¶ 13]
[10] [Id. ¶ 14]
[11] [Id. ¶ 15]
[12] [Id.]

were entangled with the stage cable of the swing scaffolding, and as they were lifted by the crane, the scaffolding system was pulled apart.[13]

Craft was working on a portion of the affected swing scaffolding. The scaffolding and parts of the rolling roof rigging system fell to the ground from the seventh floor.[14] The collapse threw Craft from the scaffolding, his harness suspended him in mid-air, and he experienced blood loss from a severed artery in his arm.[15] Other workers on site were able to lower Craft to the ground and apply a make-shift tourniquet before Craft was moved through a window to the interior of Ochsner's, where he received emergency medical care.[16] These events form the basis of the negligence action brought by Plaintiffs.

As noted above, Lemoine was the general contractor on the Project where the alleged injury occurred, and Lemoine subcontracted with FL Crane on the Project through a Master Service Agreement (the "MSA").[17] The MSA contained language stating that Lemoine was the statutory employer of FL Crane's employees;[18] this MSA forms the basis for Lemoine's "statutory employer" claim. However, Plaintiffs argue this document may not be relied on by the Court because it is beyond the pleadings.[19]

Lemoine filed the instant Motion on April 24, 2023, requesting that the Court dismiss Plaintiffs' claims against Lemoine with prejudice.[20] Lemoine argues the MSA between Lemoine and FL Crane explicitly establishes that Lemoine was Craft's statutory employer.[21] Furthermore, Lemoine contends that at the time of the alleged injury, Craft was an employee of FL Crane, and

---

[13] [Id. ¶ 17; Doc. No. 59-1, p. 2]
[14] [Doc. No. 12, ¶ 18]
[15] [Id. ¶ 19, Doc. No. 59-1, p. 2]
[16] [Doc. No. 12, ¶ 20]
[17] [Doc. No. 59-1, p. 4]
[18] [Id.]
[19] [Doc. No. 71-1, p. 1]
[20] [Doc. No. 59]
[21] [Doc. No. 59-1, p. 4]

Craft was in the course and scope of his employment with FL Crane, working on scaffolding.[22] Thus, Lemoine argues Craft's exclusive remedy is under the LWCA, and Lemoine is immune from tort liability because of the LWCA's exclusivity provisions.[23]

In Opposition, Plaintiffs maintain that the MSA between Lemoine and FL Crane is beyond the pleadings and thus may not be relied upon by the Court in its ruling on the instant Motion.[24] Furthermore, Plaintiffs argue that even if the Court found Lemoine to be the statutory employer of Craft, that status would not shield Lemoine from tort liability for injuries resulting from intentional acts.[25]

In response, Lemoine argues that the MSA may be relied upon by the Court in ruling on the instant Motion because Plaintiffs referred to it in their Complaint and because the MSA is central to Plaintiffs' claim.[26] Furthermore, Lemoine argues Plaintiffs will be unable to defeat the instant Motion by asserting an intentional tort because Plaintiffs did not plead an intentional tort in their Complaint.[27]

The issues are briefed, and the Court is prepared to rule.

## II.   LAW AND ANALYSIS

### A.  Rule 12(c) Standard

"Federal Rule of Civil Procedure 12(c) permits any party to move for a judgment on the pleadings, provided the motion is made early enough to avoid delaying trial." *NAZ, LLC v. Philips Healthcare, a Div. of Philips Elecs. N. Am. Corp.*, No. CV 17-2882, 2018 WL 1202570, at *5 (E.D. La. Mar. 8, 2018). "A court may grant a Rule 12(c) motion only if the pleadings evince no

---

[22] [Id. p. 2]
[23] [Id. p. 4–6]
[24] [Doc. No. 71-1, p. 1]
[25] [Id. p. 2]
[26] [Doc. No. 72, p. 2]
[27] [Id. p. 3–4]

4

disputes of genuine material fact and questions of law alone remain." *Id.* "A motion brought pursuant to Fed.R.Civ.P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).

"The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the pleading standard to state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of all complaints under Rule 8(a)(2) is now a "plausibility" standard found in *Bell Atlantic Corp. v. Twombly* and its progeny. *See* 550 U.S. at 544 (2007). Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 1949 (2009) (citations omitted).

In reviewing the adequacy of the pleadings, the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "Just like when it reviews a motion to dismiss under Rule 12(b)(6), when reviewing a Rule 12(c) motion, a district court must consider the pleadings, any documents the pleadings incorporate by reference, and matters of which the court may take judicial notice." *Naz, LLC*, 2018 WL 1202570, at *5.

### B. Analysis

Lemoine's argument relies solely on the language in the MSA asserting Lemoine's statutory employer status over FL Crane's employees. Lemoine argues that it is FL Crane's statutory employer, and thus, Plaintiffs' exclusive remedy is that afforded by the LWCA. Lemoine bases this argument on the terms of the MSA signed by Lemoine and FL Crane, which reads as follows:

> (n) In cases where Subcontractor's employees (defined to include Subcontractor's direct, borrowed special, or statutory employees) are covered by the Louisiana Worker's Compensation Act, LA R.S. 23:1021 et. seq., Contractor and Subcontractor agree that all work and operations performed by Subcontractor and its employees pursuant to this MSA and any Project Work Order are an integral part of and essential to the ability of Contractor to generate its products and services for purposes of LAR.S. 23:1061(A)(1). Furthermore, Contractor and Subcontractor agree that Contractor is the principal or statutory employer of Subcontractor's employees for the purpose of LA R.S. 23:1061(A)(3). Irrespective of Contractor's status as the statutory employer or special employer (as defined in LA R.S. 23:1031 (C)) of Subcontractor's employees, Subcontractor shall remain primarily responsible for the payment of Louisiana Worker's Compensation benefits to its employees and shall not be entitled to seek contribution for such payments from Contractor.[28]

As a result of the terms of this written agreement, Lemoine argues that it is immune from suits brought by employees seeking recovery for non-intentional torts.

In opposition, Plaintiffs argue that in moving for judgment on the pleadings, Lemoine may not rely on the MSA because it is beyond the pleadings. In the alternative, Plaintiffs argue even if Lemoine were deemed the statutory employer of Craft, that status would not shield Lemoine from tort liability arising from an intentional tort.

The Court will first address whether the MSA may be considered in this ruling. Next, it will address the parties' arguments as to the statutory employer doctrine under the LWCA. Lastly,

---

[28] [Doc. No. 59-2, p. 15]

6

the Court will consider Plaintiffs' argument that even if Lemoine were deemed the statutory employer, Lemoine would not be shielded from tort liability arising from an intentional tort.

### 1. The MSA is not "beyond the pleadings."

Plaintiffs argue that Lemoine's statutory-employer argument relies on a contract—the MSA—that was not attached to nor incorporated by reference in Plaintiffs' Complaint; thus, the Court cannot consider that contract in ruling on the judgment on the pleadings.[29] Plaintiffs state that the standard applied under a Rule 12(c) motion is the same as is applied under a Rule 12(b)(6) motion, and "courts should consider a motion to dismiss based on the four-corners of the plaintiff's pleadings, not the evidence that Defendants may seek to introduce in response." *Ramos v. Taylor*, No. 1:20-CV-1256-RP, 2022 WL 17815128, at *4 (W.D. Tex. Dec. 19, 2022) (*citing Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)).[30] Plaintiffs also rely on a case from the United States District Court for the District of Kansas in arguing that it is impermissible for Lemoine to go outside of the pleadings in an attempt to raise an affirmative defense. *Cap. Sols., LLC v. Konica Minolta Bus. Sols. USA, Inc.*, No. 08-2027-JWL, 2008 WL 3538968, at *3 (D. Kan. Aug. 11, 2008) ("At the motion to dismiss stage, the court cannot properly consider extrinsic evidence that isn't central to a plaintiff's claim. This is the rule even if the extrinsic evidence is central to the defendant's 'theories of defense.'").[31] Plaintiffs further contend that "[i]f matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one of summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent."[32]

---

[29] [Doc. No. 71-1, p. 4]
[30] [Id.]
[31] [Id.]
[32] [Id. pp. 3–4]

7

In response, Lemoine contends the Court may consider documents attached to a 12(c) motion without converting the motion into one for summary judgment because the Plaintiffs' complaint refers to the MSA, and the MSA is central to the Plaintiffs' claim.[33] First, Lemoine points to three instances in which the Complaint refers to the MSA:

> (1) Paragraph 8: "FL Crane **contracted** with Lemoine to perform certain industrial work…at Ochsner's Lafayette General Medical Center."
> (2) Paragraph 9: "Lemoine was subject to **duties of care as the general contractor**…had additional duties of care through contracts that the Petitioner does not presently possess."
> (3) Paragraph 30: "Lemoine as general contractor exercised control over the construction work at the Ochsner Project and owed a duty of care through **contractual obligation** and/or undertook a duty of care specifically to Charles."[34]

Furthermore, Lemoine highlights that the MSA was attached to Lemoine's Answer as Exhibit A.[35]

Next, Lemoine argues that the MSA is central to Plaintiffs' claim. Lemoine cites the following in support of this argument: "A document is central to a claim if its attachment 'merely assists the plaintiff in establishing the basis of the suit.'" *Port Cargo Servs., LLC v. Westchester Surplus Lines Ins. Co.*, CV 22-1018, 2023 WL 3211868, at *3 (E.D. La. May 2, 2023) (*citing Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000)).[36]

Here, the MSA between Lemoine and FL Crane is central to Plaintiffs' claim. First, the MSA addresses shared liability. Shared liability is a central part of Plaintiffs' claim because they are seeking to recover damages under a theory of vicarious liability. Without some contractual link, the relationship allegedly giving rise to vicarious liability between Lemoine and FL Crane would not exist, and Plaintiffs would have no action under a theory of vicarious liability. Next, the

---

[33] [Doc. No. 72, p. 2]
[34] [Id., p. 3 (emphasis in original)]
[35] [Id.]
[36] [Id.]

8

MSA sets forth potential remedies and defines the parties' applicable standard of care. Again, this is crucial to Plaintiffs' claims against Lemoine and FL Crane. Without the MSA's definition of the duty of care, Plaintiffs would likely be unable to prove that Lemoine/FL Crane violated their respective duties. The MSA is a central part of Plaintiffs' claim for vicarious liability and is not beyond the scope of the pleadings because it affects Plaintiffs' theory of recovery, theory of liability, and the applicable standard of care.

Accordingly, the Court finds that it may consider the MSA in evaluating the instant Motion because it was referred to in the pleadings and is central to Plaintiffs' arguments.

### 2. Recovery in Tort is Barred by the LWCA.

Under the LWCA, the rights granted to an employee or his dependent on account of a compensable workplace injury are "exclusive of all other rights, remedies, and damages." La. R.S. 23:1032(A)(1)(a). Accordingly, an employee with a compensable injury is limited to recovery of worker's compensation benefits and may not bring a suit in tort. *Ramos v. Tulane Univ. of Louisiana*, 2006-0487 (La. App. 4 Cir. 1/31/07), 951 So. 2d 1267, 1269, *citing Griffin v. Wickes Lumber Co.*, 2002-0294 (La. App. 1 Cir. 12/20/02), 840 So. 2d 591, 594, *writ denied*, 2003-1338 (La. 9/19/03), 853 So. 2d 640. The Court refers to this concept of an exclusive remedy through worker's compensation benefits as "tort immunity."

A "principal" is any person who "undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." La. R.S. 23:1032(A)(2). When a principal contracts to execute any work, which is a part of his trade, business, or occupation, the person with which the principal contracts is considered the "contractor." La. R.S. 23:1061(A)(1). The immunity afforded to the "principal" referenced in La.

9

R.S. 23:1032 extends to a contractor under La. R.S. 23:1061, and the contractor is granted the same exclusive remedy protections of La. R.S. 23:1032, thus making the contractor immune from claims in tort for injuries sustained by a statutory employee during the course and scope of their employment.[37]

Here, Lemoine contracted with FL Crane to install z-grits, insulation, and stucco at the Project, and Craft was performing said work when the accident occurred. Therefore, for purposes of La. R.S. 23:1032(A)(2) and 1061(A)(1), Lemoine is the principal, FL Crane is the contractor, and Craft was the employee of the contractor.

### a. Statutory Employer Status under the LWCA

The LWCA grants tort immunity to statutory employers. The doctrine of statutory employer is codified in La. R.S. 23:1061:

> [W]hen any "principal"..., undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person,...for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032[.] For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

La. R.S. 23:1061(A)(1). When a valid written contract recognizes the existence of a statutory employer relationship, there is a rebuttable presumption of a statutory relationship between the principal and a contractor's employees. La. R.S. 23:1061(A)(3). In 1997, the LWCA was amended to provide that when a valid written contract recognizes the existence of a statutory employer relationship:

> there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees

---

[37] [Doc. No. 72, p. 4]

>that can only be overcome by showing the work performed is not an integral part of or essential to the ability of the principal to generate that principal's goods, products, or services.

La. R.S. 23:1061(A)(3).

In this case, there is a written MSA recognizing the existence of a statutory employer relationship. Specifically, the MSA states, "Contractor and Subcontractor agree that Contractor is the principal or statutory employer of Subcontractor's employees for the purpose of LA R.S. 23:1061(A)(3)."[38] Therefore, the burden shifts to the Plaintiffs to show the work performed by Craft was not an integral part of or essential to the ability of Lemoine to generate Lemoine's goods, products, or services.

### i. Trade, Business or Occupation Defense

Under Louisiana law, a principal who undertakes to have work performed by a contractor is a "statutory employer" with respect to work that is "a part of" the principal's trade, business, or occupation. This is known as the trade, business, or occupation defense. The trade, business, or occupation defense establishes that a statutory employment relationship exists when (1) a principal undertakes work that is part of his trade, business, or occupation, by means of a written contract with a contractor that is the employee's immediate or statutory employer; and (2) the contract between the principal and contractor recognizes the principal is a statutory employer. The trade, business, or occupation defense is effectively codified in La. R.S. 23:1061 and defines a statutory employer as a principal who establishes that it is the statutory employer via a written contract for work within its trade, business, or occupation.[39] Under this theory, statutory employment includes two essential elements: (1) the work must be part of the principal's trade, business, or occupation;

---

[38] [Doc. No. 59-2]
[39] [Doc. No. 59-1, p. 5]

and (2) the principal must have been engaged in that trade, business, or occupation at the time of the injury.[40]

Here, Lemoine was the principal that contracted with FL Crane for work as part of Lemoine's trade, business, or occupation. Lemoine's "trade, business, or occupation" was the construction of the Project, and Craft was working on the Project at the time of the alleged injury. Therefore, the work performed by Craft satisfies both prongs of the test for statutory employment.

### ii. Two-Contract Theory

Another method by which to establish a statutory employer relationship is via a "two contract" theory. *See* La. R.S. 23:1061(A)(2); *see also Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Auth.*, 2002-1072 (La. 4/9/03), 842 So. 2d 373, 378. The "two contract" defense applies when:

> (1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed.

*Allen*, 842 So. 2d at 379 (citations omitted). Simply put, this defense theory creates a statutory employer relationship between a general contractor and the employees of its subcontractors, regardless of trade or business.

Here, Lemoine had a two-contract structure in place with Ochsner as the third party and FL Crane as the subcontractor. Pursuant to that contract, work had to be done on the Project, and the subcontract was entered into for part of the work to be performed. Craft was performing part of that work at the time of the alleged injury.

---

[40] [Id., p. 12]

Thus, under both theories of defense, Lemoine is the statutory employer of FL Crane, and Plaintiffs' exclusive remedy is through the LWCA. Therefore, this Court agrees with Lemoine that, under the statutory employer doctrine and pursuant to the MSA here, Lemoine cannot be held liable for non-intentional torts.

### iii. Intentional Tort Defense

Plaintiffs argue that, regardless of any purported statutory-employer status, the worker's compensation bar does not apply to injuries resulting from an intentional act.[41] La. Stat. Ann. § 23:1032(B) ("Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.") Plaintiffs contend that they have uncovered a basis to assert intentional-tort claims against Lemoine and have filed a Motion for Leave to File Second Amended Complaint to assert such claims.[42] Plaintiffs further assert that Lemoine's instant motion is moot as a result of Plaintiffs' Motion for Leave to File Second Amended Complaint.[43] *See McCoy v. Bogan*, No. CV 20-388-JWD-SDJ, 2021 WL 3730057, at *1 (M.D. La. July 1, 2021), report and recommendation adopted, No. CV 20-388-JWD-SDJ, 2021 WL 3729961 (M.D. La. Aug. 23, 2021) ("Generally, when a plaintiff seeks to amend following a motion to dismiss, 'the preferred course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave.'").

In response, Lemoine argues Plaintiffs' allegation of intentional tort is both procedurally and substantively improper. First, Lemoine argues Plaintiffs did not plead an intentional tort in

---

[41] [Doc. No. 71-1, p. 5]
[42] [Id.]
[43] [Id.]

13

their Complaint, but only alleged an intentional tort for the first time in opposition. This Court did not grant the Plaintiffs' Motion for Leave, and Lemoine opposed that motion on the basis that it was filed "merely to overcome the instant Motion."[44] "To survive a Rule 12(c) motion, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir.2022) (*quoting Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)). Because Plaintiffs' Motion for Leave was not granted as to the addition of intentional tort claims against Lemoine, it is improper for Plaintiffs to rely on those allegations in arguing the instant Motion.

Lastly, Lemoine argues that Plaintiffs do not include any allegations of fact that would lead to a conclusion that Lemoine was culpable for an intentional tort. Even if this Court had granted Plaintiffs' Motion for Leave, Lemoine argues the allegations of intentional tort are a "mere recitation of the elements of intentional tort and are completely unsupported by any evidence that Lemoine committed same."[45] Under the *Iqbal* and *Twombly* pleading standard, courts considering a Rule 12(c) motion are "only obligated to allow those complaints that are facially plausible…to survive such a motion." *Iqbal*, 556 U.S. at 678–79, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. Further, neither "conclusory allegations" nor "unwarranted deductions of fact" will suffice to prevent a motion to dismiss. *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (*citing Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)).[46]

---

[44] [Doc. No. 72, p. 5]
[45] [Doc. No. 72, p. 7]
[46] [Doc. No. 72, p. 7]

Here, the Magistrate Judge issued a Memorandum Ruling[47] granting in part and denying in part Plaintiffs' Motion for Leave to File Second Amended Complaint.[48] The Magistrate Judge's Memorandum Ruling noted that, "[t]o the extent this ruling addresses Plaintiffs' intentional tort claims against FL Crane, the analysis would apply equally to their claims against Lemoine to the extent Lemoine is deemed a statutory employer."[49] The ruling went on to deny Plaintiffs' Motion to Amend "to the extent Plaintiffs seek to assert [intentional tort] claims against FL Crane."[50] Therefore, Plaintiffs' argument that they alleged an intentional tort is now moot.

Considering the above, Lemoine is entitled to judgment on the face of the pleadings.

### III. CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Lemoine's Motion for Judgment on the Pleadings [Doc. No. 59] is **GRANTED**, and all of Plaintiffs' claims against Lemoine are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 7th day of August, 2023.

_____
Terry A. Doughty
United States District Judge

---

[47] [Doc. No. 83]
[48] [Doc. No. 69]
[49] [Doc. No. 83, p. 2]
[50] [Id. at p. 12]