UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**CHARLES CRAFT, ET AL**                                    **CASE NO.  6:22-CV-05899**

**VERSUS**                                                  **JUDGE TERRY A. DOUGHTY**

**MAX ACCESS, LLC,**                                        **MAGISTRATE JUDGE CAROL B.**
**D/B/A SKY CLIMBER**                                       **WHITEHURST**
**ACCESS SOLUTIONS, ET AL**

## REPORT AND RECOMMENDATION

Before the Court is Defendant Max Access, LLC's ("Max Access") Partial Motion to Dismiss pursuant to F.R.C.P. Rule 12(b)(6). (Rec. Doc. 96). Plaintiffs oppose the Motion (Rec. Docs. 102 & 102-1), and Max Access replied (Rec. Doc. 115). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is RECOMMENDED that the Partial Motion to Dismiss be DENIED.

### Factual Background

Plaintiffs filed the present action on November 2, 2022, in the 15th Judicial District Court, Lafayette Parish, Louisiana, following a swing scaffolding accident that occurred on May 16, 2022.  (Rec. Doc. 1-1).  On November 4, 2022, Defendants

filed a Notice of Removal citing diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) (Rec. Doc. 1), and on November 8, 2022, the Court entered a Removal Order. (Rec. Doc. 8). Following several rounds of procedural pleadings, on September 12, 2023, Plaintiffs filed a Revised Second Amended Complaint asserting, in pertinent part, claims for negligence and product liability under the Louisiana Products Liability Act ("LPLA") against Max Access. (Rec. Doc. 91). On September 27, 2023, Max Access filed the Partial Motion to Dismiss presently before the Court (Rec. Doc. 96).

According to the Revised Second Amended Complaint, Plaintiff Charles Craft was an employee of FL Crane & Sons, Inc. ("FL Crane"). (Rec. Doc. 91, ¶ 7). In 2022, FL Crane contracted with Max Access to deliver and install swing scaffolding for industrial work to be completed at Ochsner's Lafayette General Medical Center. (*Id*. at ¶¶ 8-9). Per Plaintiffs, Max Access was responsible for the delivery, appropriate erection, inspection, and maintenance of the swing scaffolding and "failed to properly erect, install, construct, and/or inspect the scaffolding, creating a dangerous condition and unreasonable risk of harm, despite knowledge that workers…would be working at extreme heights." (*Id*. at ¶¶ 9-10).

On May 16, 2022, two porta potties being lifted by a crane became entangled with the stage cable of the swing scaffolding upon which Plaintiff Charles Craft was working. (*Id*. at ¶¶ 14-15). As a result, the scaffolding system failed and fell to the

ground along with parts of a rolling roof rigging system, including beams and the telescoping mast. (*Id*. at ¶ 15). Plaintiff Charles Craft was thrown from the scaffolding and his left arm was severed nearly in half. (*Id*. at ¶ 16). Per Plaintiffs, while Plaintiff Charles Craft's safety harness prevented him from falling to the ground, "the harness suspended him in mid-air while experiencing extreme blood loss from a severed artery in his arm." (Rec. Doc. 91, ¶ 16). Plaintiff Charles Craft was ultimately lowered to the ground where a make-shift tourniquet was applied before he was moved through a window to receive emergency medical care at Ochsner's Lafayette General Medical Center. (*Id*. at ¶ 17).

Plaintiffs contend, in pertinent part, that Max Access's "negligent, careless, and unlawful conduct caused, contributed, and/or was a substantial contributing factor to the swing scaffolding's failure and [Plaintiff Charles Craft's] corresponding injuries. (*Id*. at ¶ 27). Per Plaintiff, Max Access "owed a statutory and general duty of care to [Plaintiff Charles Craft] to properly assemble, construct, erect, inspect, and secure the swing scaffolding." (*Id*. at ¶ 26). Plaintiffs allege that Max Access breached their duty by failing to put pins in the rigging system to properly secure the swing scaffolding, by failing to perform adequate inspections to uncover the improper assembly of the scaffolding, and by using a rigging system that was too large for the job. (*Id*. at ¶ 27). Per Plaintiff, Max Access is "liable for the acts and

3

omissions by each of its employees, agents, representatives, and /or servants…" (*Id*. at 29).

Plaintiffs further allege that, in addition to the delivery, appropriate erection, inspection, and maintenance of the swing scaffolding, Max Access also qualifies as a "manufacturer" and "[a]t a minimum…constructed the subject scaffolding on which [Plaintiff Charles Craft] was working" and "also labeled the scaffolding as its own and otherwise held itself out to be the manufacturer of the product," and/or in the alternative, that Max Access was a "seller" of scaffolding of an alien manufacturer within the meaning of the LPLA. (Rec. Doc. 91 at ¶ 31). Plaintiffs contend that the swing scaffolding was an "unreasonably dangerous product" and "failed due to foreseeable improper assembly, including improper fashioning of the pins (or pin) through the splice tube (also known as a beam connecting tube) and into two separate beams, either mid beams or end beams." (*Id*. at ¶ 20). Per Plaintiff, "[t]he design is defective and unreasonably dangerous because the design fails to allow for an adequate visual or other inspection to ensure the proper placement of pins" and "the failures to instruct and warn on proper assembly, use, and inspection of the product render the product unreasonably dangerous." (*Id*. at ¶ 22). Plaintiffs assert claims under the LPLA under the theories of defective construction or composition, defective design, and failure to warn. (*Id*. at ¶¶ 32-36).

4

In their Partial Motion to Dismiss, Max Access maintains that Louisiana law does not allow Plaintiffs to maintain causes of action for both negligence and products liability arguing that the LPLA is Plaintiffs' sole and exclusive remedy for the alleged wrongs of Max Access. (Rec. Doc. 96). Accordingly, Max Access requests that Plaintiffs' negligence claim be dismissed. (*Id*.).

## Applicable Law

### I. Law applicable to Rule 12(b)(6)

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007)(internal quotations omitted)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)(citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224

F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

6

"[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir.2009)(quoting *Bell Atlantic*, 127 U.S. at 556); See also *In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir.2008). With these precepts in mind, the Court considers Plaintiffs' Revised Second Amended Complaint.

## II. Whether the LPLA is a bar to Plaintiffs' negligence claim.

Max Access does not argue that Plaintiffs have failed to plead sufficient facts to sustain a negligence claim; rather, they maintain that the LPLA is a bar to Plaintiffs' negligence claim. (Rec. Doc. 96). The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. Under the LPLA, "a plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA." *Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 244–45 (E.D. La. 1996).

To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product;

(2) that the plaintiff's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the plaintiff's damage arose from a reasonably anticipated use of the product by the plaintiff or someone else. *See* La. R.S. 9:2800.54(A). A product is "unreasonably dangerous" under the LPLA if the product meets at least one of the following criteria:

(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;

(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or

(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

La. R.S. 9:2800.54(B).

"These statutory mechanisms for establishing that a product is unreasonably dangerous 'are predicated on principles of strict liability, negligence, or warranty.'" *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 260–61 (5th Cir. 2002)(citing *Jefferson v. Lead Indus. Assoc.,* 930 F.Supp. 241, 245 (E.D.La.1996)). "However, for causes of action arising after the effective date of the LPLA [1988], negligence, strict liability, and breach of express warranty are not available as theories of recovery against a manufacturer, independent from the LPLA." *Id.*

8

Per Max Access, because Plaintiffs contend that Max Access is a manufacturer and/or seller under the LPLA, Plaintiffs may not recover from Max Access for damage caused by their product on the basis of any theory of liability that is not set forth in the LPLA. (Rec. Doc. 96, p. 3)(citing *Mayard v. St. Jude Med. Inc.,* No. 6:19-CV-00761, 2019 WL 7476714 (W.D. La. Dec. 10, 2019), report and recommendation adopted, No. 19-CV-0761, 2020 WL 54111 (W.D. La. Jan. 3, 2020)).

Plaintiffs maintain that the LPLA cannot be used as a shield to immunize manufacturers from all tort liability. (Rec. Doc. 102-1, p. 2)(citing *McCleary v. Elekta, Inc.,* No. CV 19-00052, 2021 WL 1680480, *3 (W.D. La. Apr. 28, 2021)). Plaintiffs offer two arguments in support of their contention. First, Plaintiffs contend that manufacturers can be held liable for general negligence claims where a defendant's capacity as a manufacturer is not essential. *Id.* (citing *Crawford v. Dehl,* No. CIV.A. 08-0463, 2008 WL 4186863, *3 (W.D. La. July 21, 2008)). Second, Plaintiffs cite to several Louisiana and federal cases finding a defendant manufacturer can wear "two hats," where one hat gives rise to liability under the LPLA, and the other gives rise to liability under general negligence principles. (*Id.* at p. 5). Defendants argue that Plaintiffs' reliance on these cases is misplaced. (Rec. Doc. 115).

Plaintiffs rely heavily on *Crawford v. Dehl* in support of their first argument, namely that a manufacturer may be held liable for general negligence claims where the role of the defendant as manufacturer is not essential. (Rec. Doc. 102-1). However, *Crawford* is distinguishable from the instant matter. The plaintiff in *Crawford* never alleged LPLA claims against the manufacturer, rather the plaintiff only pleaded claims of negligence. *Crawford*, 2008 WL 4186863 at *1. Thus, the question before the *Crawford* court was not whether a negligence claim and an LPLA claim could proceed together, but whether a defendant manufacturer could be liable simply under a theory of negligence rather than pursuant to the LPLA. Here, Plaintiffs attempt to hold Max Access liable for both general negligence claims and LPLA claims. The Court finds this distinction significant, and *Crawford* inapposite.

The Court considers Plaintiffs' reliance on the "two hat" theory, however, to be consistent with caselaw and the general purpose of the LPLA. In their reply, Max Access attempts to distinguish the "two hat" theory cases from the present action arguing that Plaintiffs' allegations against Max Access's employees are merely "restated [LPLA] defective construction claims" as opposed to standalone negligence allegations for which Max Access could be held vicariously liable. (Rec. Doc. 115, p. 5). A review of the "two hat" theory cases is needed and was summarized by the *McCleary* Court.

In *McCleary*, this Court dismissed plaintiffs' negligence claims[1] finding the plaintiffs' reliance on the "two hat" theory misplaced. *McCleary v. Elekta, Inc.*, No. CV 19-00052, 2019 WL 5295699, at *4 (W.D. La. Oct. 18, 2019). The Court reasoned:

> In nearly every case where the "two hat" theory is invoked, the defendant manufacturer is being held vicariously liable for their employees' negligence. *See Lavergne*, 838 So.2d 845; *Triche v. McDonald's Corp.*, 2014-318 (La. App. 5 Cir. 10/29/14), 164 So.3d 253, 258; *Colbert v. Sonic Rests., Inc.*, 741 F. Supp. 2d 764, 772 (W.D. La. 2010). There the courts found the LPLA's exclusivity provision was not applicable because manufacturers cannot use the LPLA as a shield to immunize them from all tort liability. *See Lavergne*, 838 So.2d at 848 ("While the LPLA's exclusivity provision eliminates a general negligence cause of action for damages *caused by a product,* it does not eliminate the liability of a manufacturer for damages *caused by the negligent use of its product* by one of its employees."). These cases are clearly distinguishable from the instant matter because here the damage asserted by Plaintiffs was *caused* by the product itself not by an act of [Defendant's] employee. Therefore, the "two hat" theory is inapplicable to this current matter.

*Id*.

Max Access argues that this case is more akin to the *McCleary* case. This Court disagrees. In *McCleary*, the Court found that the claims in the complaint before it arose out of the damage caused by the product itself, not by an act of the defendant's employees. *Id*. Here, per Plaintiffs, the cause of Plaintiffs' damages could be a defective product, but it could alternatively be the negligent acts of Max

---

[1] The Court later granted the plaintiffs' Motion for Leave to Amend their complaint which removed the LPLA claims and proceeded instead on the previously dismissed claims of negligence and negligent misrepresentation. *See McCleary v. Elekta, Inc.*, No. CV 19-00052, 2020 WL 5665075 (W.D. La. Sept. 22, 2020).

Access's employees in training, securing, inspecting, installing, or otherwise dealing with the swing scaffolding. (Rec. Doc. 102-1, p. 4). While Plaintiffs allege that the swing scaffolding was an unreasonably dangerous product manufactured, at least in part, by Max Access, they also allege that Max Access, via its employees, breached their duty of care by failing to put pins in the rigging system to properly secure the swing scaffolding, by failing to perform adequate inspections to uncover the improper assembly of the scaffolding, and by using a rigging system that was too large for the job. (Rec. Doc. 91, ¶¶ 27 & 29).

Max Access contends that these allegations of negligence merely repeat the factual bases asserted in the LPLA defective construction claims. (Rec. Doc. 115, p. 5). To prevail on a defective construction claim under Louisiana law, a plaintiff must show that "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." *Colbert*, 741 F. Supp. 2d at 767 (citing La. R.S. 9:2800.55). In other words, a plaintiff must prove that a product "is defective due to a mistake in the manufacturing process." *Id*.

The Court finds that Plaintiffs' negligence cause of action pleads additional facts not pleaded in their LPLA cause of action and outside the scope of a defective construction claim. As such, at this procedural stage, the Court finds Plaintiffs' "two

12

hat" theory argument persuasive. However, while Plaintiffs' arguments are persuasive such that dismissal of Plaintiffs' negligence claim is inappropriate at this early procedural stage, the Court notes that discovery could potentially support Max Access's position that Plaintiffs' negligence cause of action is, in fact, tantamount to their LPLA cause of action and thereby barred by the LPLA's exclusivity provision.

Accordingly, it is recommended that Max Access's Partial Motion to Dismiss be DENIED.

## **Conclusion**

For the reasons discussed herein, it is recommended that Max Access's Partial Motion to Dismiss (Rec. Doc. 96) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized

by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 12th day of December, 2023.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE