UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**CHARLES CRAFT ET AL**                    **CASE NO. 6:22-CV-05899**

**VERSUS**                                 **JUDGE TERRY A. DOUGHTY**

**MAX ACCESS L L C ET AL**                 **MAGISTRATE JUDGE CAROL B. WHITEHURST**

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 157] filed by Defendant, Burlington Insurance Co. ("Burlington"). Plaintiffs, Charles Craft ("Charles") and Crystal Craft (collectively, the "Crafts" or "Plaintiffs") filed a Response in Opposition [Doc. No. 168]. Burlington then filed a Reply [Doc. No. 172].

For the reasons set forth, Burlington's Motion is **GRANTED**.

### I. Background

The buildings we shape thereafter shape us, often for the good, but sometimes for the bad. This is a worksite-based personal injury case, involving cranes, hoists, and scaffoldings. The Crafts' troubles began on May 16, 2022, at a construction project at Ochsner's Lafayette General Medical Center (the "Project").[1] Charles worked for FL Crane & Sons, Inc ("FL Crane").[2] The Lemoine Company, LLC ("Lemoine"), the Project's general contractor, hired FL Crane to install "z-girts, insulation, and stucco."[3] Lemoine rented a crane from Morrow Equipment Company,

---
[1] [Doc. No. 12, at ¶¶ 8, 13].
[2] [Id. at ¶ 7].
[3] [Id. at ¶ 8].

LLC, ("Morrow"), and hired a crane operator from Skyhook Ops, LLC ("Skyhook").[4] Burlington is Skyhook's insurer.[5]

On that fateful day, Charles was working atop scaffolding at the Project. Charles claims that Skyhook improperly hoisted three porta potties to the hospital's seventh floor, causing the porta potties to entangle with the stage cable securing the scaffolding.[6] The result—a total failure of the scaffolding system by being pulled apart.[7] And when the scaffolding failed, it injured Charles' left arm.[8]

Plaintiffs filed a Petition on November 2, 2022, in the Fifteenth Judicial District Court in Lafayette, Louisiana.[9] Two days later, Defendants removed the case to this Court based on diversity jurisdiction.[10] On August 7, 2023, this Court dismissed Lemoine from the case upon finding that Lemoine was Charles' statutory employer.[11] Plaintiffs then filed their Revised Second Amended Complaint, naming Burlington as a defendant whose insurance policy ("Policy") allegedly covered the claims and damages asserted against Skyhook.[12] The issue in this Motion is whether the Policy covers Plaintiffs' claims against Skyhook.

The parties have briefed all relevant issues, and the Court is ready to rule.

---

[4] [Id. at ¶ 12].
[5] [Doc. No. 91, at ¶ 5].
[6] [Doc. No. 12, at ¶¶ 15–16].
[7] [Id. at ¶ 17].
[8] [Id. at ¶ 19].
[9] [Doc. No. 1-1].
[10] [Doc. No. 1].
[11] [Doc. No. 88].
[12] [Doc. No. 91, at ¶ 64].

## II. Law and Analysis

### A. Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgement." *Id.* at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (citation modified).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation modified). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Under Louisiana law, which applies in this diversity case, interpreting insurance contracts is a legal question. *Maldonado v. Kiewit Louisiana Co.*, 146 So. 3d 210, 218 (La. Ct. App. 2014). When construing insurance policies, Louisiana courts apply the general rules of contract interpretation, prescribed in the Louisiana Civil Code. *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 642 F.3d 506, 510 (5th Cir. 2011) (citations omitted). The interpreting court construes the words and phrases of the agreement according to their plain, ordinary, and generally prevailing meanings, unless they have acquired some technical meaning. *Id.* (citing La. Civ. Code Ann. art. 2047). Only if the words of a contract are not clear and explicit or lead to absurd consequences, may the interpreting court seek to determine the common intent of contracting parties. *Id.* (citing La. Civ. Code Ann. arts. 2045–46).

And exclusionary provisions in policies are "strictly construed against the insurer." *Id.* (quoting *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d 170, 173 (La. 2000)).

### B. Policy Coverage

Burlington, in this Motion, argues that Charles' injury is not covered by the Policy under the "Amendment – Employer's Liability Exclusion" ("Exclusion"). The Exclusion, in relevant part, states that the Policy does not apply to bodily injury to:

> (1) *Any "employee"*, "leased worker", "temporary worker", "volunteer worker", *statutory "employee"*, casual worker, or seasonal worker *of any insured, or a person hired to do work for or on behalf of any insured* or tenant of any insured, arising out of and during:
> (a) Employment by any insured; or
> (b) Directly or indirectly performing duties related to the conduct of any insured's business[.][13]

Burlington insured Skyhook and the Crafts' claims against Skyhook are for bodily injury.[14] But Charles was not employed by or hired to do work for Skyhook. Nevertheless, Burlington argues that (1) Lemoine employed Charles and (2) Lemoine is an insured under the Policy. Therefore, they argue, Charles' injuries are still subject to the Exclusion. Thus, the Court's analysis focuses on whether Lemoine is an insured falling within the Exclusion and whether Charles is an employee covered by the Exclusion.

#### 1. Is Lemoine an insured covered by the Exclusion?

The Policy defines "insured" as those "designated in the Declarations," meaning only Skyhook was covered.[15] The "Additional Insured – Owners, Lessees or

---

[13] [Doc. No. 157-2, at p. 63] (emphasis added).
[14] [Doc. No. 91, at ¶¶ 58–64].
[15] [Doc. No. 157-2, at p. 25].

Contractors" endorsement ("Endorsement") adds, as an "additional insured" to the Policy,

> any person or organization for whom [Skyhook is] performing operations when [Skyhook] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [Skyhook's] policy. Such person or organization is only an additional insured only with respect to liability for "bodily injury" . . . caused, in whole or in part, by:
>    1. Your acts or omissions; or
>    2. The acts or omissions of those acting on your behalf;
> in the performance of your ongoing operations for the additional insured.[16]

Plaintiffs argue that the above language makes Lemoine an "additional insured" only where "vicariously liable for Skyhook's acts."[17] Plaintiffs primarily rely on the Louisiana First Circuit's holding in *Maldonado* for this interpretation.[18] The contract in *Maldonado* provided that the additional insured is covered "only to the extent that" the additional insured is "liable for bodily injury, property damage, or personal and advertising injury caused by" actions by the primary insured or those acting on the primary insured's behalf. *Maldonado*, 146 So.3d at 219 (internal quotation marks omitted). The *Maldonado* court interpreted this language as shielding the additional insured only if they are found vicariously liable for the primary insured's faults. *Id.* Plaintiffs argue the same applies here. The Court disagrees for two reasons.

---

[16] [Id. at p. 49].
[17] [Doc. No. 168-1, at p. 12].
[18] [Id. at p. 13].

First, other Louisiana federal and state courts have declined to extend *Maldonado* beyond its facts. *See, e.g.*, *Moreno v. Entergy Corp.*, 233 So. 3d 176, 187 (La. App. Ct. 2017) (distinguishing *Maldonado* based on the insurer's "complete reservation of rights" to provide coverage to the additional insured "only when the additional insured is found to be vicariously liable for the conduct of [the primary insured] or those acting on its behalf"); *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, No. 11-2375, 2017 WL 2984867, at *14 (E.D. La. July 12, 2017) (distinguishing *Maldonado* based on the "additional insured endorsement in *Maldonado*" differing from the one in *Hanover*); *Moore v. Home Depot USA, Inc.*, 352 F. Supp. 3d 640, 647–48 & n.9 (M.D. La. 2018) (rejecting *Maldonado* for "read[ing] into the policy a limit on coverage that is not in the policy's text" and being inconsistent with the "caused in whole or part" language from the endorsement as vicarious liability is all or nothing and cannot be partial) (citations omitted). The Court finds *Moore*'s analysis sound and persuasive as reading a vicarious liability requirement into the Endorsement contravenes its plain text and leads to "absurd consequences." *Bayou Steel*, 642 F.3d at 510.

Second, in *Maldonado*, the plaintiffs in the underlying incident eventually dropped their claims against the primary insured. *Maldonado*, 146 So.3d at 220. Without any claims against the primary insured, the additional insured is uncovered by that policy. This case, however, is the exact opposite. Here, the claims against Lemoine, the additional insured, were dismissed. That does not, and could not, affect any alleged claims against the primary insured, Skyhook. As such, the Court declines

to extend *Maldonado* to new and uncharted sites. Therefore, Lemoine is an "Insured" covered by the Exclusion.

### 2. Is Charles an employee covered by the Exclusion?

The Exclusion covers bodily injury to any "employee, leased worker, temporary worker, volunteer worker, statutory employee, casual worker, or seasonal worker of any insured, or a person hired to do work for or on behalf of any insured."[19] The Policy defines "Employee" as

> a person working for salary or wages, or any substitute for salary or wages, as compensation in any manner by any insured, under any contract of hire, express or implied, oral or written, where the insured, as employer, has the power or right to control and direct the employee. "Employee" includes a person hired by the hour, day or any other irregular or intermittent period. "Employee" includes a "leased worker" or "temporary worker".[20]

Plaintiffs make two arguments based on the above definition. First, they argue that Charles is not an "employee" as he was never paid, controlled, or directed by either Skyhook or Lemoine.[21] Second, they argue that even if Charles is found to be Lemoine's employee because Lemoine paid Charles, the definition also requires "the insured," i.e., Skyhook, "have the power or right to control and direct the employee."[22]

Plaintiffs, however, overlook a key part of the Exclusion's language. The Exclusion applies not only to various types of "employees," but also to anyone "hired to do work for or on behalf of any insured."[23] In *Prejean v. McMillan*, the Louisiana

---

[19] [Doc. No. 157-2, at p. 63] (internal quotation marks omitted).
[20] [Id. at p. 47].
[21] [Doc. No. 168-1, at p. 16].
[22] [Id. at p. 17] (quoting [Doc. No. 157-2, at p. 47]).
[23] [Doc. No. 157-2, at p. 63].

First Circuit held that a policy barring coverage to bodily injury to "a person hired to do work for or on behalf of any insured" meant what it stated—anyone hired to do work for any insured and injured from doing such work is uncovered by the policy. 274 So.3d 575, 580 (La. App. Ct. 2019). Similarly, in *Eads v. Chartis Specialty Ins. Co.*, the plaintiff argued that the contract at issue covered him because it did not define temporary workers as "employees." 133 So.3d 722, 729 (La. App. Ct. 2014). The *Eads* court, however, found this argument was "of no importance" because the plaintiff was uncovered since he was "hired for the purpose of providing services to or on behalf of any insured and he seeks recovery for bodily injury." *Id.* (internal quotation marks omitted). These principles are governing, and therefore, Charles is covered by the Exclusion.

Thus, upon finding that Lemoine is an "insured," falling under the Exclusion and that Charles is an "employee," also falling under the Exclusion, the Court holds that Plaintiff's claims against Defendants are not covered by the Policy.

### III. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Burlington's Motion for Summary Judgment [Doc. No. 157] is **GRANTED** and Plaintiffs' claims against Burlington are **DISMISSED WITH PREJUDICE.**

MONROE, LOUISIANA, this 2nd day of September 2025.

_____
Terry A. Doughty
United States District Judge