UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **CHARLES CRAFT ET AL** | **CASE NO.  6:22-CV-05899** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **MAX ACCESS L L C ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment [Doc. No. 191] filed by Defendant, Sky Climber, LLC ("Sky Climber"). Plaintiffs, Charles Craft ("Charles") and Crystal Craft (collectively, the "Crafts"), filed an Opposition [Doc. No. 225]. Sky Climber then filed a Reply [Doc. No. 241].

For the reasons set forth, Sky Climber's Motion is **GRANTED**.

**I.    Background**

This is a personal injury suit that originates at a construction site at Ochsner's Lafayette General Medical Center (the "Project").[1] The Lemoine Company, LLC, ("Lemoine"), the Project's general contractor, hired Charles' employer, FL Crane & Sons, Inc. ("FL Crane"), to install "z-girts, insulation, and stucco."[2] To work on the Project building's side, FL Crane procured swing scaffolding from Max Access, LLC

---

[1] [Doc. No. 91, at ¶ 8].
[2] [Id. at ¶¶ 7–8].

Page **1** of **10**

("Max Access").[3] Sky Climber designed and manufactured the swing scaffolding system that FL Crane used at the Project, which is called the "Rolling Roof Rig."[4]

On May 16, 2022, an otherwise routine day, Charles was working atop the Rolling Roof Rig at the Project.[5] At the same time, other workers were lifting three porta potties for cleaning.[6] That routine operation became a nightmare when one of the porta potties being hoisted caught the tieback line that secured the scaffolding system.[7] This entanglement caused the scaffolding system to collapse, severing Charles' left arm in the process.[8]

Plaintiffs filed a Petition for damages on November 2, 2022, in the Fifteenth Judicial District Court in Lafayette, Louisiana.[9] Two days later, Defendants removed the case to this Court based on diversity jurisdiction.[10] The issue in this Motion is whether the Plaintiffs' product liability claims against Sky Climber satisfy the Louisiana Products Liability Act ("LPLA").

The parties have briefed all relevant issues, and the Court is prepared to rule.

## II.  Law and Analysis

### A.  Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[3] [Id. at ¶ 9].
[4] [Id. at ¶ 22; Doc. No. 201, at p. 2].
[5] [Doc. No. 91, at ¶ 18].
[6] [Id. at ¶ 9].
[7] [Id.].
[8] [Id. at ¶¶ 13–15].
[9] [Doc. No. 1-1].
[10] [Doc. No. 1].

matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgement." *Id.* at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (citation modified).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation modified). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving

party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In this diversity case, Louisiana substantive law controls. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under LPLA, a defendant is liable if:

1) The defendant manufactured a product,
2) That proximately caused the claimant's damage,
3) While the claimant was using the product in a reasonably anticipated way,
4) Due to a feature, making the product "unreasonably dangerous" by way of its:
   (a) Construction or composition, (b) Design, (c) Lack of adequate warnings, OR
   (d) Non-conformity with an express warranty.

La. Stat. Ann. § 9:2800.54. The unreasonably dangerous feature must be present when the product leaves the manufacturer's control, and the claimant bears the burden of proving all the above. *Id.* Whether a defect is unreasonably dangerous is a question of fact. *Hines v. Remington Arms*, 648 So.2d 331 (La. 1994).

   **B.    LPLA**

Plaintiffs argue that the Rolling Roof Rig is unreasonably dangerous because of (1) its design and (2) inadequate warnings. In support of Summary Judgment, Sky Climber counters that Plaintiffs cannot prove either claim and argues that (1) FL

Crane's misuse of the product was not a "reasonably anticipated use" and (2) Plaintiffs cannot show proximate causation.

The Court addresses each argument in turn.

### 1. Were the Project conditions a reasonably anticipated use of the Rolling Roof Rig?

LPLA imposes liability on manufacturers only if the claimant's damages arose from a "reasonably anticipated use of the product by the claimant or another person or entity." La. Stat. Ann. § 9:2800.54(A). Thus, a reasonably anticipated use is a "threshold" or prerequisite for liability. *Kampen v. Am. Isuzu Motors, Inc.*, 157 F.3d 306, 314 (5th Cir. 1998). "'Reasonably anticipated use' means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La. Stat. Ann. § 9:2800.53(7).

Notably, however, the Court's focus is not limited to solely the claimant's use of the product, but also to anyone else's use of the product when it allegedly injured the claimant. In *Marable v. Empire Truck Sales of Louisiana, LLC*, for example, the parties disputed whether the plaintiff's husband's use of a truck was "reasonably anticipated." 221 So.3d 880, 894–95 (La. Ct. App. 2017) (concluding the plaintiff's husband's use was "reasonably anticipated"), *writ denied*, 230 So.3d 210 (La. 2017).

Reasonably anticipated use is an objective standard, but Louisiana courts have not formulated a precise and exhaustive list on what counts as a "reasonably anticipated use." *Tatum v. S. Sys., Inc.*, No. 1:08-CV-00610, 2010 WL 2874406, at *3 (W.D. La. July 19, 2010). But oft-cited factors include (1) whether the product's use was obviously dangerous, (2) whether the product's use contravened explicit

instructions, warnings, or labels, and (3) the sophistication or experience of the user with such products. *Id.* & n.4 (collecting cases). On examining the case's facts through this lens, the Court concludes that FL Crane's use of the Rolling Roof Rig at the Project was not a "reasonably anticipated use."

### a. Was the Rolling Roof Rig's use at the Project obviously dangerous?

Consistent with the statute and Louisiana precedents, this Court examines not only Charles' use of the Rolling Roof Rig, but also FL Crane's. Under the applicable OSHA regulation, employers must provide a "competent person" to train "each employee who is involved in erecting, disassembling, moving, operating, repairing, maintaining, or inspecting a scaffold" on the "correct procedures for erecting, disassembling, moving, operating, repairing, inspecting, and maintaining the type of scaffold in question." 29 C.F.R. § 1926.454(b)(2).

Plaintiffs make two arguments based on their interpretation of the regulation. First, that this provision only requires the "competent person" to be familiar with the general type of scaffolding in question and not "a specific manufacturer's design."[11] Second, they argue that a "competent person for inspection" need not "be trained to erect or disassemble the scaffolding."[12] The Court addresses each in turn.

As a threshold matter, interpretation of statutes and regulations are a question of law that courts must independently determine. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). The parties have not cited to any cases adopting their

---

[11] [Doc. No. 229, at pp.23–24].
[12] [Id. at p. 23].

preferred definitions. Nor has the Court found any precedents on point. Accordingly, the Court turns to first principles, namely the plain text of the regulation.

The word "type" means "a particular kind, class, or group." *Type*, MIRRIAM-WEBSTER DICTIONARY (Rev. Ed. 2022). This could mean either the general type of scaffolding or a specific model. The Court must, therefore, determine the appropriate level of generality. Regulations and statutes, however, are not interpreted in a vacuum—context matters. "Context also includes common sense[.]" *Biden v. Nebraska*, 600 U.S. 477, 512 (2023) (Barrett, J., concurring).

In a worksite context, having employees who are unfamiliar with the specific equipment being used would make the regulation meaningless. The regulation exists to make worksites safer and having employees who are unfamiliar with the equipment they are using would not make the environment safer. It would be like, for instance, having an airline 747 pilot fly Air Force One. The aircraft is essentially the same, but the latter may have quirks and nuances that an everyday airline pilot is unfamiliar with. Thus, the Court finds the regulation requires the "competent person" be familiar with the specific type of scaffolding in use at that worksite.

Similarly, the regulation's plain text requires training on the "correct procedures for erecting, disassembling, moving, operating, repairing, inspecting, *and* maintaining" the scaffolding. 29 C.F.R. § 1926.454(b)(2) (emphasis added). The "and" signifies each item in the list is required. This interpretation is also consistent with the regulation's purpose—the inspector must be familiar with all scaffolding procedures to inspect and ensure the workers complied with all requirements.

It is undisputed that neither FL Crane's supervisor, John Derouen, nor any other FL Crane employee was familiar with the Rolling Roof Rig.[13] Under the regulations, FL Crane, as the "employer" of those working on and using the scaffolding, had a duty to provide a competent person to train its employees on the Rolling Roof Rig. But they did not contract such a person from Max Access or anyone else. Without such a person keeping a watchful eye over the activities, employees, like Charles, would inevitably be injured. Thus, the absence of a "competent person," familiar with the Rolling Roof Rig, undoubtedly makes its use obviously dangerous.

### b. Was the Rolling Roof Rig used at the Project contrary to its ascribed warnings and labels?

Plaintiffs argue that the warnings, while adhered to, were inadequate as they did not warn Max Access employees or anyone else that the securing pins used in the "connecting tube design" may appear to be secure when they are actually not secure.[14] Sky Climber, however, argues that the scaffolding was used contrary to the "training and instructions that Sky Climber gave to Max Access," which were "passed along to F.L. Crane when it leased the he scaffolding equipment from Max Access."[15] Specifically, they argue that someone other than a qualified Max Access employee tampered with the system sometime before the incident.[16]

Sky Climber's contentions, however, are without support. They rely mostly on allegations that the scaffolding's counterweights were missing to conclude that

---

[13] [Id. at p. 11; Doc. No. 201, at p. 6].
[14] [Doc. No. 229, at p. 42].
[15] [Doc. No. 201, at p. 27].
[16] [Id. at pp. 9–10].

someone "changed or tampered with" the scaffolding.[17] But Plaintiffs have refuted the basis for this claim by submitting photographic evidence that showed all counterweights were accounted for the day after the accident.[18] Accordingly, the Court finds that there is no evidence suggesting the Rolling Roof Rig was used in a way that contradicts any of its instructions or warnings.

### c. Was FL Crane familiar or experienced with using such products?

This prong, as construed by the *Tatum* court, only requires that the user or purchaser be "generally familiar" with "machinery such as" the item in question and "their inherent dangers." *Tatum*, 2010 WL 2874406, at *3 n.4. The user or the purchaser need not, however, be an expert on that product. *See id.*

FL Crane rarely used swing scaffolding or rolling rigs.[19] But they were in the construction business for around two decades.[20] Given their lengthy experience, one can reasonably expect FL Crane would be familiar with scaffolding and the "inherent dangers" of improper scaffolding use. *Id.* Thus, FL Crane, the purchaser-user of the Rolling Roof Rig, is a sophisticated user of scaffolding.

To sum, two of the three factors favor the Sky Climber's position that the Rolling Roof Rig was not used in a reasonably anticipated way—FL Crane was a sophisticated user and they used the Rolling Roof Rig in an "obviously dangerous" way. While the other factor—FL Crane did not use the Rolling Roof Rig contrary to

---

[17] [Id. at p. 10].
[18] [Doc. No. 229, at p. 17].
[19] [Doc. No. 225-7, at p.30].
[20] [Id. at p. 2].

any warnings or instructions—favors the Plaintiffs. As such, the Court concludes the Rolling Roof Rig's use at the Project was not "reasonably anticipated" under LPLA.

### 2. Did the Rolling Roof Rig's unreasonable dangerousness proximately cause Charles' injuries?

Since the Court has determined Plaintiff was not injured from a reasonably anticipated use of the Rolling Roof Rig, the Court finds it unnecessary to resolve Plaintiffs' claims about the Rolling Roof Rig being unreasonably dangerous and proximately causing their injuries. "If it is not necessary to decide more [to dispose of a case, then] it is necessary not to decide more." *PDK Labs., Inc. v. United States DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment). Accordingly, the Court will not address these arguments.

### III. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Sky Climber's Motion for Summary Judgment [Doc. No. 191] is **GRANTED** and Plaintiffs' claims against Sky Climber are **DISMISSED WITH PREJUDICE.**

MONROE, LOUISIANA, this 22nd day of September 2025.

_____
Terry A. Doughty
United States District Judge