UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **CHARLES CRAFT ET AL** | **CASE NO. 6:22-CV-05899** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **MAX ACCESS L L C ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

MEMORANDUM ORDER

Pending is a Rule 702 Motion[1] [Doc. No. 195] filed by Defendant Max Access, LLC ("Max Access"). Plaintiffs, Charles Craft ("Charles") and Crystal Craft (collectively, "Plaintiffs"), filed an Opposition [Doc. No. 222]. Max Access filed a Reply [Doc. No. 242].

For the reasons set forth, Max Access' Motion is **GRANTED IN PART AND DENIED IN PART**.

**I.    Background**

This personal injury suit began at a construction site at Ochsner's Lafayette General Medical Center (the "Project").[2] Charles' employer, FL Crane & Sons, Inc. ("FL Crane"), was hired to install "z-girts, insulation, and stucco" on the Project building.[3] To work on the building's side, FL Crane procured swing scaffolding from Max Access.[4] The scaffolding system they used is called the "Rolling Roof Rig."[5]

---

[1] Parties refer to the Motion as *Daubert* Motions, but the December 2023 amendments to Rule 702 reiterate that the Rule and not caselaw governs the admissibility of expert witnesses. *See* FED. R. EVID. 702 advisory committee's note to 2023 amendment.
[2] [Doc. No. 91, at ¶ 8].
[3] [Id. at ¶¶ 7–8].
[4] [Id. at ¶ 9].
[5] [Doc. No. 201, at p. 2].

Page 1 of 8

On May 16, 2022, while Charles was working atop the Rolling Roof Rig at the Project, other workers lifted three porta potties for cleaning.[6] Inadvertently, the porta potties, while being hoisted up, caught the tieback line that secured the scaffolding system.[7] This entanglement caused the scaffolding system to collapse, severing Charles' right arm in the process.[8]

Plaintiffs filed a Petition for damages on November 2, 2022, in the Fifteenth Judicial District Court in Lafayette, Louisiana.[9] Two days later, Defendants removed the case to this Court based on diversity jurisdiction.[10] The issue in this Motion is whether the Plaintiffs' proffered witness, Brant Lacombe ("Lacombe"), qualifies as an expert under Rule 702 of the Federal Rules of Evidence.

The parties have briefed all relevant issues, and the issue is ripe.

## II.   Law & Analysis

### A.   Standard of Review

The Federal Rules of Evidence permits witnesses who are qualified as experts to testify via opinions if the proponent shows by a preponderance of the evidence that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

---

[6] [Doc. No. 91, at ¶¶ 12–13].
[7] [Id. at ¶ 14].
[8] [Id. at ¶¶ 14–15].
[9] [Doc. No. 1-1].
[10] [Doc. No. 1].

FED. R. EVID. 702. A witness may be qualified as an "expert" based on their "knowledge, skill, experience, training, or education." *Id.* Thus, courts must independently screen both the testifier and the testimony.

### B. Brant Lacombe

Max Access argues that (1) Lacombe is not a qualified witness and (2) even if he is, his opinions do not satisfy Rule 702.[11] Plaintiffs refute both arguments.[12] The Court addresses each in turn.

#### 1. Expert's Qualification

District courts have broad "discretion to admit or exclude [proffered] expert testimony." *Sullivan v. Rowan Companies, Inc.*, 952 F.2d 141, 145 (5th Cir. 1992) (citations omitted). Formal education is "not a prerequisite" for a witness to be deemed an expert. *See S. Cement Co., Div. of Martin-Marietta Corp. v. Sproul*, 378 F.2d 48, 49 (5th Cir. 1967). The Rule permits qualification even by one's "skill, experience, [or] training." FED. R. EVID. 702. The Fifth Circuit has held, however, that experts may be excluded if their expertise is too far removed from the subject of their proposed testimony. *See Sullivan*, 952 F.2d at 145. In *Sullivan*, the witness had many advanced degrees, but little exposure to metallurgical engineering—only using microscopes to analyze metal failures—so the Fifth Circuit barred him from opining on possible metallurgical defects in electric sockets. *Id.* at 145–46.

---

[11] [Doc. No. 195-1, at pp. 6–7].
[12] [Doc. No. 222-1, at p. 5].

Here, it is undisputed that Lacombe is not an expert by way of education—his college degree is in criminal justice, not engineering.[13] Plaintiffs argue that Lacombe's fifteen years of experience as a swing scaffolding salesperson in addition to his designation as an OSHA-competent trainer, who teaches employees how to use swing scaffoldings, makes him qualified.[14]

Ordinarily, Lacombe's experience as a salesperson would be deemed too far removed from the scope of his testimony—why a scaffolding system, like the one he sold, failed. *See Sullivan*, 952 F.2d at 145. But the Court must review Lacombe's role in its "factual context." *Luv N' Care v. Laurain*, No. CV 3:16-00777, 2021 WL 3440623, at *6 (W.D. La. August 5, 2021). Lacombe's duties as a salesperson included not only sales, but also assisting crews with rigging to ensure the "job get[s] done."[15] Lacombe first says he performed such tasks "plenty of times in [his] career," but later states, "it wasn't [his] primary function" and only did so "a handful of times over [his] career."[16] Ironing out such inconsistencies in the evidence, however, should be done via "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993).

Max Access also asserts that Lacombe's OSHA-related training is inadequate. Specifically, they argue that his initial OSHA 10 training was from "years ago" and

---

[13] [Doc. No. 195-7, at pp. 7, 33].
[14] [Doc. No. 222-1, at p. 15].
[15] [Doc. No. 195-7, at pp. 11–12].
[16] [Id.].

he only had one other employer-administered two-to-three-day class.[17] Max Access argues that he had "no other certifications or training with regard to scaffolding."[18] This overlooks Lacombe's deposition testimony, where he stated he "had to do a certain amount of trainings per year to maintain [his] valid [Train the Trainer] certificate."[19] As a currently certified trainer,[20] he likely completed these trainings.

Given his experience with assisting crews in rigging swing scaffolds and his OSHA competency, the Court is unconvinced by Max Access' arguments that Lacombe is not qualified as an expert under Rule 702.

### 2. Expert's Opinions

Plaintiffs proffer three opinions from Lacombe. Under Rule 702, the proponent, i.e., Plaintiffs, must show each opinion satisfies all four elements of the Rule.

#### a. Lacombe's First Opinion

Lacombe's first opinion is that:

> Max Access, LLC had an obligation to properly assemble the swing stage scaffolding and rigging. Proper assembly requires insertion of the codder pins through the beam splice as well as the hole in the beam tube. The purpose of inserting the codder pins through the beam and the beam tube is to prevent the connection from being separated.[21]

As Max Access points out, however, this statement is not an opinion.[22] Max Access agrees it had the above-stated obligation.[23] Nevertheless, Plaintiffs argue this

---

[17] [Doc. No. 195-1, at p. 8].
[18] [Id.].
[19] [Doc. No. 195-7, at p. 32].
[20] [Doc. No. 222-18, at p. 79, Ex. A, Resume of Brant Lacombe].
[21] [Doc. No. 195-6, at pp. 2–3].
[22] [Doc. No. 195-1, at p. 12].
[23] [Doc. No. 222-1, at p. 17].

testimony is necessary to show "why Max Access was obligated to set up the swing stages."[24] But Plaintiffs make no showing, let alone a showing by a preponderance of the evidence, on how this will assist the factfinder in "understand[ing] the evidence or determin[ing] a fact in issue[.]" FED. R. EVID. 702.

Thus, the Court concludes Lacombe cannot proffer his first opinion as it fails to meet Rule 702(a)'s requirement that the opinion "help the trier of fact to understand the evidence or determine a fact in issue." *Id.*

### b. Lacombe's Second Opinion

Lacombe's second opinion is that:

> The swing scaffolding failed because the roof rigging separated at the beam and the beam tube. Photos taken of the beam splice on the 5th floor show that the pin was inserted through the beam splice. Photos of the back beam on the 11th floor show that the holes in the beam had not been torn or damaged. This shows that the back beam was not secured with the pins. The pins went through the beam but not the beam tube.[25]

Again, the parties do not dispute the facts stated in Lacombe's opinion.[26] And Plaintiffs concede that "the jury is capable of understanding the concept."[27] Nevertheless, they argue that the opinion will "aid the jury's understanding of important parts" of the case.[28] The Court agrees. Lacombe relies on his experience in the swing scaffolding industry to determine and the photographs taken post-accident—showing the beam holes were not "torn or damaged"[29]—to suggest the pins

---

[24] [Id. at p. 18].
[25] [Doc. No. 195-6, at p. 3].
[26] [Doc. No. 222-1, at p. 18].
[27] [Id.].
[28] [Id.]
[29] [Doc. No. 195-6, at p. 3].

Page 6 of 8

did not penetrate the beam, only the splice tube. This represents "a reliable application" of a "reliable principle" to "sufficient facts" of the case and will "help the trier of fact to understand the evidence or determine a fact in issue"—namely, why the swing scaffolding system failed the way it did. *See* FED. R. EVID. 702.

As such, the Court finds Lacombe's second opinion complies with Rule 702's strict requirements.

### c. Lacombe's Third Opinion

Lacombe's third opinion is that:

> OSHA certified training for swing scaffolding does not address specific types of swing scaffolding. There are differences in design in the type of scaffolding that require different assembly. For instance, Spider does not use the exact same design as Sky Climber. One can thus be certified as a competent person but still have to follow manufacturing guidelines and may be unfamiliar with the scaffolding design. Due to differences in design, competent persons assembling and inspecting scaffolding must follow the manufacturer's warning to ensure proper assembly and safety of the swing stage.[30]

The crux of why Plaintiffs proffer this testimony is to show that Charles' employer, FL Crane, had a competent person on site per OSHA regulations and that inadequate warnings led to the accident. This Court's ruling[31] on Defendant Sky Climber, LLC's motion for summary judgment,[32] however, found, as a matter of law, that FL Crane did not have a competent person on site.[33] Accordingly, the Court finds this argument is moot.

---

[30] [Id.].
[31] [Doc. No. 247].
[32] [Doc. No. 191].
[33] [Doc. No. 247, at pp. 5–10].

Page **7** of 8

### III. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Max Access' Rule 702 Motion [Doc. No. 195] is **GRANTED IN PART** and **DENIED IN PART**.

The Motion is **GRANTED** as to Lacombe's first opinion.

The Motion is **DENIED** as to Lacombe's second opinion.

The Motion is **DENIED AS MOOT** as to Lacombe's third opinion.

MONROE, LOUISIANA, this 30th day of September 2025.

                                        Terry A. Doughty
                                    United States District Judge